IDA I. BROUGH vs. AMOS TOWLE & another.

Suffolk.    January 27, 1905. — April 3, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND,
LORING, & BRALEY, JJ.

*Master and Servant.*

In an action against the members of a firm engaged in a general teaming business
for injuries received from being struck by a team of the defendants when the
driver was intoxicated and driving negligently, if it appears that when the plain-
tiff was struck the team was going toward the defendants' stables at about eleven
o'clock in the morning, that it was the practice of the defendants not to have
their teams return to the stables in the middle of the day and to have the horses
fed from pails at their stand, but that the driver of this team had done all the
work assigned to him on that day, that an unusually heavy rain was falling,
and that on a few occasions in extreme weather the defendants' teams had been
sent to the stables, it can be found that the driver was acting within the scope
of his employment at the time of the plaintiff's injury.

TORT for injuries from being struck by one of the teams of
the defendants through the alleged negligence of the driver.
Writ dated December 20, 1901.

At the trial in the Superior Court before *Stevens*, J. it
appeared that the defendants were engaged in the business of
general teaming and expressing, having an office in Boston
proper and their stables on Miller Street in that part of Bos-
ton called Charlestown, and that the accident happened in the
manner described in the opinion.   The jury returned a verdict
for the plaintiff in the sum of $1,500; and the defendants
alleged exceptions, raising in argument the single question
stated by the court.

The case was argued at the bar in January, 1905, before
*Knowlton, C. J., Morton, Loring, & Braley,* JJ., and afterwards
was submitted on briefs to all the justices.

*W. I. Badger & W. H. Hitchcock,* for the defendants.

*J. J. Irwin,* for the plaintiff.

KNOWLTON, C. J.   The only question argued by the defend-
ants' counsel on this bill of exceptions, is whether there was
any evidence to warrant the jury in finding that, at the time of
the injury to the plaintiff, the defendants' driver was acting

within the scope of his employment. He was a teamster, who had been sent that morning by one of the defendants to an oil store on Purchase Street in Boston, to take a load of oil to the Baltimore boat at Battery Wharf. At about eleven o'clock on the same day, he was seen driving through City Square in Charlestown, towards the defendants' stables where the team was kept. He was driving negligently, and apparently was in a state of intoxication. The plaintiff was struck by the team and injured. These stables were the only place where the defendants put up their horses; but one of the defendants testified that it was their practice to feed their horses in the middle of the day, by means of pails, in Boston. No other work had been assigned to the driver that day, but one of the defendants testified that he was told to come back to the stand in Boston after finishing his work with the oil. Light rain began early in the morning, but soon after eight o'clock it became very heavy. An inch and eighty-seven one hundredths of rain fell between eight o'clock in the morning and eight o'clock in the evening.

The teamster had for the time the custody of the team, and the jury well might believe that he was given considerable discretion in the care of it, under unusual conditions. The defendants' testimony tended to show that, on a few occasions, in extreme weather, the teams had been sent to the stables; and it is a very natural inference that, as the usual time for feeding the horses was drawing near, and as no particular work had been assigned him, the driver, in the interest of his employer, undertook to take the horses across the bridge to the stables in Charlestown, rather than to attempt to feed them from pails in Boston, in a rain which had become so heavy that horses could not stand out in it without great discomfort. It is not expressly stated that all the material evidence is reported in the bill of exceptions; but if we assume that nothing else appeared, we think that the circumstances warranted a finding that the driver was attempting to take the team to the stables for his employers. No other possible reason is shown for his driving directly towards the stables, in close proximity to them at that time.

The jury might have disbelieved the testimony of one of the

defendants, that he told the teamster to return to the stand after taking the oil to the boat, and, from other things in his statements and manner, they might have drawn an inference that the drivers were given much greater authority in regard to the management and care of their teams than he represented.

We are of opinion that the evidence was rightly submitted to the jury.

*Exceptions overruled.*